## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 7 |
| | ) |
| CHESTER A. LYN AND | ) Case No. 10-13214 (KG) |
| BRENDA A. LYN, | ) |
| | ) |
|     Debtors. | ) |
| | ) |
| CHESTER A. LYN AND BRENDA A. LYN, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Adv. Pro. No. 11-53140(KG) |
| | ) |
| TRANSAMERICA SMALL BUSINESS | ) |
| CAPITAL, INC., CAPITAL CROSSING BANK, | ) |
| AURORA BANK AND METROPOLITAN LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| AURORA BANK FSB, | ) |
| | ) |
|     Counterclaimant, | ) |
| | ) |
| v. | ) |
| | ) |
| CHESTER A. LYN, BRENDA A. LYN AND | ) |
| ROES 1 through 10, inclusive, | ) |
| | ) **Re Dkt Nos. 12, 13, 14, 16** |
|     Counterdefendants. | ) |

## MEMORANDUM OPINION

The Debtors, Chester A. Lyn and Brenda A. Lyn (the "Lyns" or the "Debtors") filed an

adversary proceeding for Declaratory Relief for Determination of Liens and to Compel Turnover

of Property relating to an annuity the Debtors had signed over to Transamerica Small Business

Capital, Inc. ("Transamerica") as part of a loan negotiation.  In answering this complaint,

Defendant, Aurora Bank FSB ("Aurora") brought certain counterclaims against the Debtors

seeking (I) reformation of the loan instrument to reflect the true mutual intent of the parties that the Lyns were to be the signers of the Loan Documents and (ii) damages for the Debtors' fraudulent conduct.

In 1999, the Small Business Administration (the "SBA") authorized a loan between the Debtors' company, JB Cal, Inc. ("JB Cal") and Transamerica.[1]  The SBA set forth preconditions for its authorization, which included Transamerica obtaining and properly perfecting liens on the following collateral: 1) Land and improvements located at 1000 Ridge Road, Ridge, Delaware (the "Ridge Property"); 2) Land and improvements located at 129 Cornwell Drive, Bear, Delaware (the "Bear Property"); and 3) an annuity held by Metropolitan Life (the "Annuity"). Transamerica obtained liens on all three pieces of collateral in the name of JB Cal even though JB Cal owned only the Ridge Property.  Aurora claims that Transamerica and the Lyns had a meeting of the minds that the Lyns as individuals would guarantee the loan instrument rather than JB Cal and is therefore seeking reformation of the contract that the Lyns are the appropriate signatories to the Loan Documents instead of JB Cal.

Presently before the Court, is Debtors' Motion to Dismiss Aurora's Counterclaim (D.I. 13).  For the reasons discussed herein, the Court will grant the Debtors' Motion to Dismiss.

<u>**JURISDICTION**</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

---

[1] Transamerica subsequently assigned its security interest in the Annuity to Capital Crossing Bank, which became a division of Lehman Brothers Bank in 2007.  Lehman Brothers Bank changed its name to Aurora Bank in 2009.

## RELEVANT BACKGROUND

On March 11, 1999, the Small Business Administration (the "SBA") authorized an SBA-guaranteed loan for Borrower JB Cal.  This was not a blanket authorization; rather, Section H of the SBA Authorization is entitled **Collateral Conditions** and sets forth, among others, the three conditions Aurora addresses in its counterclaim.  The relevant conditions state that the Lender (Transamerica) must obtain a lien on 100% of the interests and properly perfect all lien positions on the following relevant collateral:

1. First Mortgage on land and improvements located at 1000 Ridge Road, Ridge, Delaware. Subject to no other liens.

2. Third Mortgage on land and improvements located at 129 Cornwell Drive, Bear, Delaware.  Subject only to prior liens of First Mortgagor Crestar Mortgage in the amount of $205,000.00 and Second Mortgagor MBNA in the present amount of $50,000.00 and limited to $50,000.00.

4. Assignment of certificate of deposit or cash value of life insurance or redemption value of annuity held by Metropolitan Life (Owner) in the amount of $20,000.00, with acknowledgment from the issuing financial institution.

The Loan/Security Agreement ("Loan Agreement") between Transamerica and JB Cal was signed on April 21, 1999.  The Loan Agreement describes the Lyns as Guarantors in its definitions section.  The Debtors signed the Loan Agreement as Guarantors.  As such, they promised prompt payment and performance of all of Borrower's obligations to the Lender relating to the Loan pursuant to the Guaranty Agreements.

Sub-section 3.2 of the Loan Agreement states that the Borrower (JB Cal) shall grant liens in the attached Exhibit 1.  These liens include the liens from the SBA Authorization stated above.  Sub-section 3.3 states that the Borrower (again, JB Cal) mortgages over to the Lender all of the Borrower's rights/title/interest in any real or personal property described in the Security Agreement and Security Documents.

3

**Ridge Property**

JB Cal owned the Ridge Property at all times relevant to actions described in Aurora's counterclaim. The Lyns have never had an ownership interest in the Ridge Property. Transamerica recorded a mortgage on the Ridge Property pursuant to the Loan Agreement in Exhibit 1. The Loan Agreement was prepared by listing "Borrower" as "J B & Cal Inc" and the word "President" underneath the signature line. Mrs. Lyn signed the Agreement in her capacity as an officer of JB Cal and granted the mortgage to Transamerica.

**Bear Property**

The Lyns owned the Bear Property at all times relevant to the actions described in Aurora's counterclaim. JB Cal has never had an ownership interest in the Bear Property. Transamerica obtained a mortgage on the Bear Property on April 21, 1999 from JB Cal, even though JB Cal had no ability to authorize such a mortgage. This mortgage was recorded on April 23, 1999. The mortgage document had "J B & Cal Inc" typed on the mortgage document at a location where Ms. Lyn signed on behalf of the company as President. Transamerica recorded this mortgage with the New Castle County Recorder of Deeds. The Trustee abandoned the Bear Property on July 5, 2012, pursuant to an Order from this Court.

**Annuity**

The Lyns owned the Annuity at all times relevant to the actions described in the counterclaim. Keeping with the SBA directive, the Lyns personally assigned the Annuity over to Transamerica. Transamerica recorded a UCC1 statement against JB Cal as to the Annuity as a result of the Lyns' assignment. JB Cal has never had an ownership interest in the Annuity.

**The Adversary Proceeding**

The Lyns and JB Cal filed voluntary petitions for Chapter 11 relief under the Bankruptcy Code (the "Code") on October 4, 2010. (D.I. 1).  The Court converted these cases to Chapter 7 cases on March 19, 2012.  (D.I. 264).  Prior to the conversion, on August 19, 2011, the Debtors filed a complaint against Aurora under 11 U.S.C. § 542 of the Code.  (Adv. D.I. 1).  Aurora, a defendant in the adversary proceeding, filed its counterclaim against the Lyns (and the Trustee, initially), raising two counts: Count I for reformation and Count II for fraud.  (Adv. D.I. 11, 12). In Count I, Aurora seeks reformation of the Loan Documents and/or Transamerica's subsequent assignment to reflect that the Lyns, individually, were to be the signers of the Loan Documents. Aurora indicates that this was the true intent of the Lyns and Transamerica and the error was caused by either a unilateral or mutual mistake.  In Count II, Aurora seeks damages relating to the Lyns' alleged fraud.

## STANDARD OF REVIEW

The Debtors seek dismissal of Aurora's counterclaims under Rule 12(b) of the Federal Rules of Civil Procedure ("FRCP"), incorporated within Federal Rules of Bankruptcy Procedure ("FRBP") 7012(b).  In deciding a motion to dismiss, the Court must accept all well-pleaded allegations in the counterclaim as true and view them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004).  The issue is not whether the plaintiff will succeed on the merits but whether the plaintiff is entitled to offer evidence to support the claims.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800, 814-15, 102 S.Ct.

2727, 73 L.Ed.2d 396 (1982). While all reasonable inferences fall in favor of the plaintiff, the Court "need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *Sands v. McCormack*, 502 F.3d 263, 267-68 (3d Cir. 2007) (quoting *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997)).

## DISCUSSION

The Debtors raise several Rule 12(b) grounds in their Motion to Dismiss Aurora's counterclaim. Specifically, the Motion is premised on the following grounds: (1) Count I, as to the Ridge Property, prays for nonsensical relief; (2) Count I, as to the Ridge Property, misjoins parties (the Lyns) and fails to join indispensable parties (the Trustee); (3) Count I, as to the Bear Property, fails to provide subject matter jurisdiction to this Court since the Trustee has abandoned the property; (4) Count I, as to the Bear Property, fails to join indispensable parties (the Trustee and Chase); (5) Count I, as to the Annuity, misjoins and fails to join an indispensable party (the Trustee); (6) Count II is procedurally erroneous; (7) the statute of limitations have lapsed for Count II; and (8) Aurora fails to plead Count II with the required specificity under FRCP 9(b).

## COUNT I - REFORMATION

### The Ridge Property

#### a. **Aurora seeks Implausible Relief**

The Debtors claim that Count I, as to the Ridge Property, must be dismissed because it seeks nonsensical relief. The Court believes the Debtors attempt to allege the defense of a failure to state a claim upon which relief can be granted under FRBP 7012(b)(6).

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). To survive a motion to dismiss, the complaint must contain sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

At this stage in the counterclaim, the Court must accept Aurora's allegations as true. However, when viewing the facts in the light most favorable to Aurora, it becomes immediately clear that Aurora will still be burdened with collateralization issues if the relief sought is granted. JB Cal is the principal obligor under the Loan Agreement and the sole owner of the Ridge Property. The Lyns have never owned this property. Should this Court grant reformation as Aurora requests, then the Loan Documents will not properly effectuate the mortgage from Lyns to the Ridge Property.

On the counterclaim's face, Aurora will have the same problem it currently has with the Bear Property. This is the very problem at the heart of Aurora's reformation counterclaim. Unfortunately, Aurora failed to address the nonsensical relief that would result if their request for reformation is granted. The Court, quite simply, cannot grant the relief that Aurora requests and remain consistent in its findings. The counterclaim, as to the Ridge Property, facially lacks a plausible claim to relief.

The Court agrees with the Debtors that if reformation is granted, Aurora surrenders any right or claim it has in the Ridge Property against JB Cal. Conversely, it appears that if the Loan Agreement is left untouched, Aurora would retain rights and claims against JB Cal. Aurora can pursue JB Cal, via its Chapter 7 Trustee, on these rights and claims, but not the Debtors.

**b. Aurora has misjoined the Lyns as a party.**

The Debtors claim they have been misjoined to the counterclaim for Count I relating to the Ridge Property and the Annuity. The Court elucidates on the topic here and will reference back to this section during the Annuity misjoinder discussion.

Misjoinder is not a ground for dismissing an action in its entirety. *See* FRCP 21, incorporated by reference by FRBP 7021. The Court, while not simply dismissing the suit altogether, can instead opt to: (1) drop the misjoined parties on such terms as are just; or (2) sever a claim against a misjoined party and proceed separately. *Id.*, *Michaels Bldg. Co. v. Ameritrust Co. N.A.*, 848 F.2d 674, 582 (6th Cir. 1988) ("Parties may be dropped … on such terms as are just."

Misjoinder occurs when there is no common question of law or fact or when the events that give rise to the plaintiff's claims against the defendants do not stem from the same transaction. *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006), FRCP 20(a)(2). The Court has "broad discretion to order a severance to avoid causing unreasonable prejudice and expense to the defendant and to avoid great inconvenience in the administration of justice." *Proctor v. Applegate*, 661 F.Supp.2d 743, 781 (E.D. Mich. 2009). Furthermore, a party is misjoined when the relief the Plaintiff seeks does not make necessary the misjoined party's presence. *In re ANC Rental Corp.*, 316 BR 153, 158 (Bankr. D. Dela. 2004).

In this case, all actions giving rise to Aurora's counterclaim for reformation stem from the same transaction: the April 21, 1999 signing of the Loan Documents. The Court cannot ignore the overwhelming evidence that a common nucleus of facts exist as to the Debtors. However, as stated below, this Court lacks jurisdiction over the Bear Property claim. If the Court forced the Debtors to stay in the Bankruptcy Court for the claim relating to the Ridge

Property (and the Annuity, for that matter), the Court would be forcing both parties to fight a two court battle, one battle before this Court and one battle in state court. The Court must weigh the costs, benefits, interests of justice, judicial economy, and convenience.

After engaging in such an exercise, reflecting on the questionable relief Aurora seeks and determining that the Lyns' presence as a defendant is not necessary for Aurora to obtain relief (see Trustee analysis below), the Court finds that the Lyns should be dismissed out of Count I of Aurora's counterclaim as to the Ridge Property.

### c. Aurora has failed to join the Trustee, a necessary party.

The Debtors allege that the Trustee must be re-joined as a counter-defendant as to all collateral addressed in Count I.

Aurora initially named the Chapter 7 Trustee in its counterclaim. Upon receiving a letter from the Trustee's counsel, Aurora promptly amended its counterclaim to delete the Trustee as a defendant. The Trustee claims that Aurora violated the *Barton* Doctrine, a century-old doctrine establishing the need to seek court approval prior to filing a lawsuit against a Trustee in another forum for acts done in the Trustee's official capacity.

The Court is troubled by the Trustee's letter to Aurora. The Debtors are correct that leave of court to sue a Trustee in his official capacity is necessary only when bringing an action in another forum. *In re VistaCare Group, LLC*, 678 F.3d 218, 224 (3d Cir. 2012). The Court is concerned that the Trustee has improperly asserted the *Barton* Doctrine to compel dismissal of the Trustee-defendant.

The Trustee has not abandoned the Ridge Property and has yet to administer it; it is therefore still a part of the bankruptcy estate. Any litigation related to this property may have an effect on the estate and, thus, the Trustee is a properly named counter-defendant in a lawsuit to

protect and defend any claims against that property.  Aurora would not be in violation of the *Barton* Doctrine should it sue the Trustee in this Court.

Aurora cannot rejoin the Trustee to this counterclaim due to the counterclaim's dismissal. Aurora may pursue its claim against the Trustee, should Aurora so choose, in a new counterclaim.

### The Bear Property

**a. This Court lacks subject matter jurisdiction over any claims relating to the Bear Property.**

The Lyns claim that the Court lacks subject matter jurisdiction over claims relating to the Bear Property.  The Court must consider this before considering any other grounds for dismissal because a dismissal on these grounds will moot any other objections or defenses Aurora may have with respect to the Bear Property.  *Gosconcert v. Hillyer*, 29 C.B.C.2d 1274, 158 B.R. 24 (S.D.N.Y. 1993).

Under Bankruptcy Rule 7012(b)(1), a defendant may move, at any time, to dismiss a complaint for lack of subject-matter jurisdiction. When ruling on a motion to dismiss for lack of subject matter jurisdiction, "[a] court must accept the material factual allegations in the complaint as true, but need not draw inferences favorable to the plaintiff." *Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.),* 335 B.R. 66, 71-72 (Bankr. S.D.N.Y. 2005).  The Court may consider "materials outside of the pleadings to resolve any jurisdictional disputes, but cannot rely on conclusory or hearsay evidence." *Id.* at 72.  The plaintiff has the burden of proving the Court's subject matter jurisdiction by a preponderance of the evidence. *Id.; Common Cause of Pa. v. Pa.,* 558 F.3d 249, 257 (3d Cir. 2009).

The Court has the authority to determine whether it has subject matter jurisdiction over Aurora's counterclaim.  *See The Fairchild Corp. v. State of New York (In re The Fairchild*

*Corp.*), 425 B.R. 525, 528 (Bankr. D. Del. 2011) (citations omitted); *Chicot County Drainage Dist. v. Baxter State,* 308 U.S. 371, 60 S. Ct. 317, 84 L.Ed. 329 (1940) (explaining a federal court has authority to determine whether it has jurisdiction over a dispute)).  Consequently, the Court may determine whether to dismiss Aurora's counterclaim for lack of subject matter jurisdiction.

Rule 12(b)(1) permits a dismissal where there is a successful facial or factual challenge. When a challenge is facial, the court must consider the allegations of the complaint as true. However, if the challenge is factual, there is "substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2s 884, 890, 891 (3d Cir. 1977).  The plaintiff must set forth facts that meet and controvert those facts asserted by the defendant.  If the plaintiff does not meet and controvert the defendant's factual assertions by affidavits or other sworn proofs, then a court must determine whether it has subject matter jurisdiction based upon the factual context presented by the defendant.  *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711, 712 (3d Cir. 1982).

The Lyns have asserted a factual attack as to the subject matter jurisdiction of this Court over the claims relating to the Bear Property; in other words, the Lyns claim that the Court lacks subject matter jurisdiction regardless of how sufficiently or insufficiently Aurora pled such in its counterclaim.  Specifically, it appears the Lyns challenge that there is no "relating to" subject matter jurisdiction because the adjudication of Aurora's counterclaims would have no effect on the administration of the Lyns' bankruptcy estate.  *See* D.I. 13 at 5; D.I. 16 at 2, 3.  Aurora does not counter this contention in its reply in opposition to dismissal.  Rather, Aurora claims that subject matter jurisdiction exists because the Lyns have not yet been discharged and the Court

11

has exclusive jurisdiction over all of the Lyns' property. *See* D.I. 14 at 5. As detailed below, based upon the pleadings and evidence, Aurora has not persuaded the Court that subject matter jurisdiction exists and that jurisdiction is proper.

Pursuant to 28 U.S.C. §§ 157 and 1334, a bankruptcy court's subject matter jurisdiction extends to four types of matters: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005). Although it appears that the other three jurisdictional bases are not implicated by the parties, the Court will address all four types below.

A case "under" title 11 simply refers to the bankruptcy petition itself. *Id.* Clearly, this type of jurisdiction is not concerned with Aurora's counterclaims.

A proceeding "arises under" title 11 when the Bankruptcy Code creates the cause of action or when the Code provides the substantive right that is being invoked. *Stoe v. Flaherty,* 436 F.3d at 217 ("Whether a proceeding is a `core' proceeding that `arises under' title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive right invoked." (citing *Halper v. Halper,* 164 F.3d 830, 836, 836-37 n. 7 (3d Cir.1999)).

Here, Aurora has presented two types of claims in its counterclaim: a common law reformation claim and a common law fraud claim. Aurora's claims rely upon state-law causes of action. These claims do not arise under the Bankruptcy Code and turn solely upon state contract and regulatory law on their face. These claims do not invoke a substantive right under the Code. Finally, these claims do not rely upon a cause of action enumerated in the Code. Thus, neither of Aurora's claims "arise under" the Code. Accordingly, this Court does not possess "arising under" jurisdiction.

12

A proceeding "arises in" a bankruptcy case if the proceeding is one that could only arise in the context of a bankruptcy case by its very nature, not due to its particular facts. *Seven Fields Development Corp. v. Earnst Young LLP* (*In re Seven Fields Development Corp.*), 505 F.3d 237, 260 (3d Cir. 2007). In other words, the proceeding must owe its very existence to the filing of the bankruptcy petition.

Aurora's counterclaims are based upon actions that occurred prior to the filing of the Lyns' bankruptcy petition. The SBA Authorization and the drafting, signing and recording of the Loan Documents all occurred in 1999. If the Lyns had never filed their bankruptcy, Aurora's claims would still exist independently on their face. Because Aurora's claims do not owe their existence to the Lyns' bankruptcy filing, they do not "arise in" the bankruptcy case. Accordingly, this Court does not possess "arising in" jurisdiction.

A proceeding is "related to" a case under title 11 if the outcome might have a "conceivable effect" on the estate. *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir.1984). This requires no more than a threshold determination of whether any judgment which might result from Aurora's Bear Property counterclaims have any tangible effect on the Lyns' bankruptcy estate. *Id.* at 988. The Court does not have to examine how such judgment is reached or even if such a judgment is correct. *Id.*

By operation of law, abandoned property is no longer property of the estate. *Fields v. Bleiman*, 267 Fed.Appx. 144, 146 (3d Cir. 2008). The debtor's interest in the property is restored *nunc pro tunc* as of the petition date. *Catalano v. Commissioner Internal Revenue*, 279 F.3d 682, 685 (9th Cir. 2002); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002). Abandoned property is removed from the bankruptcy estate, "divesting the trustee of control over that property and divesting the Court of jurisdiction over matters concerning the abandoned

property." *In re DeVore*, 223 B.R. 193, 200 (9th Cir. BAP 1998) ("Abandonment removes the asset from the jurisdiction of the bankruptcy court.")). The debtor holds abandoned property as if no bankruptcy had been filed. *See also In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd* 502 U.S. 410 (1992); 8 *Collier on Bankruptcy* ¶ 554.02[3] (15 ed. rev. 2005).

The Trustee abandoned the Bear Property after proper notice and a hearing on the matter. No objections were raised to the abandonment. The Court simply asks the threshold question: what impact, if any, would a judgment in favor of Aurora have on the Lyns' bankruptcy estate? If the Court were to grant Aurora the relief it is seeking with respect to the Bear Property, the Lyns would be personally liable on the Bear Property mortgage in lieu of JB Cal. The Lyns' bankruptcy estate would not be liable to Aurora. Therefore, there would be no affect on the Lyns' bankruptcy estate. Consequently, the Court lacks "related to" subject matter jurisdiction over Aurora's counterclaims as to the Bear Property.

For the reasons stated, this Court lacks subject matter jurisdiction with respect to all claims pertaining to the Bear Property. Therefore, the Lyns are dismissed out of Count I for claims relating to the Bear Property.

**b.** Aurora has failed to join the Trustee and Chase Bank, both indispensable parties.

The Court has no jurisdiction over claims relating to the Bear Property; therefore, the issues of misjoinder and failure to join a party are moot.

## Annuity

The Debtors claim misjoinder and failure to join the Trustee as a necessary party as to Count I of Aurora's counterclaims relating to the Annuity collateral. The Court comes to the same conclusion based upon the same reasoning discussed above regarding misjoinder and

failure to join a necessary party with respect to the Ridge Property: the Lyns are dismissed out of Count I with respect to the Annuity collateral.

The Trustee has not abandoned this property and it is still a part of the bankruptcy estate. As with the Ridge Property, Aurora cannot rejoin the Trustee to this counterclaim due to its dismissal. Aurora may pursue its claim against the Trustee, should Aurora so choose, in a new counterclaim.

As a result, the Lyns are dismissed out of Count I in its entirety.

## COUNT II – FRAUD

### Fraud must be Pled with Specificity

Delaware Superior Court Rule of Civil Procedure 9(b) provides that in all allegations of fraud, the circumstances constituting the fraud must be pled with particularity. The following common law elements must be specifically pled: (1) a false representation by the defendant; (2) the defendant's knowledge of, or belief as to, the falsity of the representation, or that it was made with reckless indifference to the truth; (3) it was the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction was taking in justified reliance upon the defendant's false representation; and (5) the plaintiff suffered damage as a result of this justified reliance. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

The circumstances to be pled with particularity are those that refer to "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Autrey v, Chemtrust Industries Corporation*, D.Del., 362 F.Supp. 1085, 1092, 1093 (1973).

Aurora alleges the time and place of the misrepresentation: April 21, 1999 and in the Loan Documents. Aurora alleges with particularity the identity of the person making the

misrepresentation: the Lyns.  Aurora alleges with sufficient particularly what the Lyns obtained by their misrepresentation: protecting their property from liens.  Finally, Aurora pleads with particularity the content of the misrepresentation: the corporate name was inserted in the Loan Documents rather the Lyns' name and the meeting-of-the-minds agreement to have the Lyns' sign personally.  The Court is not swayed by the substantive arguments set forth by the Debtors relating to the substantive merits (or lack thereof) of the fraud counterclaim.  Those arguments would be left for the trial, but for the statute of limitations lapsing as discussed below.

**<u>Statute of Limitations</u>**

Equity follows the law and in appropriate circumstances will apply a statute of limitations by analogy.  *In re Tyson Foods, Inc. Consol. S'holders Litig.*, 919 A.2d 563, 584 (De.Ch. 2007); *Ryan v. Gifford*, 918 A.2d 341, 359 (De.Ch. 2007).   A three-year statute of limitations applies to fraud. 10 *Del. C.* §8106, *In re American Intern. Group, Inc.*, 965 A.2d 763, 812 (De.Ch. 2009).  The statute of limitations is an affirmative defense properly raised on a motion to dismiss.  *In re Tyson Foods*, 919 A.2d at 584.  The statute of limitations begins to run at the time that the cause of action accrues, which is generally when there has been a harmful act by a defendant.  *Id.*  This is true even if the plaintiff is unaware of the cause of action or the harm.  *Id.*

Here, all allegedly fraudulent acts took place on the same day: April 21, 1999. Transamerica had ample time to discover that the "wrong party" assigned the Annuity and the Bear Property Mortgage.  Unlike in *American Intern.*, Aurora has not alleged or proven that the Lyns fraudulently concealed any facts such that the accrual of the limitations time period could conceivably rest on a different date.  965 A.2d at 812.

In fact, all documents, on their face, indicate who the true owners of the collateral were: the Lyns. All documents, on their face, indicate what entity was assigning an interest in the collateral: JB Cal. Aurora has not asserted that any obfuscation existed with the Recorder of Deeds' records. All facts, documents and information openly existed on April 21, 1999; Transamerica had no need to conduct any further investigation to determine the germane facts. The Court is not persuaded by Aurora's reliance on *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.* simply because there is no fact-intensive debate as to when the accrual point starts. 860 A.2d 312 (Del. 2004). The most obvious date is that date upon which all actions in the counterclaim took place: April 21, 1999. All parties agree that the allegedly fraudulent conduct occurred on that date; no other date is even implicated. The Court cannot ignore the openly available information to Transamerica at the time of the alleged misrepresentation and the fact that the alleged fraud occurred over ten years ago.

Therefore, this Court dismisses Count II of the counterclaim based upon the lapsing of the three-year statute of limitations.

## **CONCLUSION**

The Court will grant the Motion to Dismiss on both counts of Aurora's counterclaim against the Lyns.

Dated: November 14, 2012

KEVIN GROSS, U.S.B.J.